UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

COLLEEN McGUIGAN,

    Plaintiff,

vs.                                    No. _____

THOMAS MURRAY, TDM PROPERTY
INVESTMENTS LLC, & TDM HOLDINGS
LLC,

    Defendants.
_____/

## COMPLAINT

Plaintiff Colleen McGuigan sues defendants Thomas Murray, TDM Property Investments LLC, and TDM Holdings LLC for declaratory judgment, violations of the Racketeer Influenced and Corrupt Organizations Act, civil remedies for criminal practices under Florida law, conversion, and civil theft. In support, McGuigan states the following:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Colleen McGuigan is a resident of Illinois.

2. Defendant Thomas Murray is a resident of Naples, Florida.

3. Defendants TDM Property Investments LLC and TDM Holdings LLC are Delaware entities with offices in Naples, Florida. Both entities conduct substantial business in Naples, Florida.

4. This is a civil case involving claims arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 and 1964. The Southern District of Florida has federal-question jurisdiction under 28 U.S.C. § 1331.

5. The Court has personal jurisdiction over each defendant because of their residency and business activity in Florida.

6. Venue is proper because this case involves an agreement with a choice-of-law provision requiring legal proceedings to be brought in this court.

**GENERAL ALLEGATIONS**

7. On February 29, 1988, Norbert Murray formed Naples Building Corporation (NBC) in Delaware. NBC operated in Naples, Florida.

8. NBC had seven shareholders: Norbert; his wife, Marjorie; and his children—defendant Thomas Murray, Shannon (Murray) Rolquin, Kimberly (Murray) Meek, Michael Murray, and plaintiff Colleen Murray (later McGuigan). Norbert and Marjorie each held a 14.1% interest; Thomas held a 21.26% interest; and Shannon, Kimberly, Michael, and Colleen each held a 12.6% interest. At the time, Colleen was nineteen years old.[1]

9. NBC owned a portfolio of shopping centers through subsidiary corporations, including the operating subsidiary, Retail Development Inc. (RDI).

10. Thomas Murray was the president of both NBC and RDI.

11. Other family members, including Norbert, Shannon, Michael, and Kimberly, worked for NBC and RDI at various times and in various capacities. Norbert was initially designated as a consultant but operated as a partner.

12. In 1992, Norbert Murray was convicted of financial crimes and directed to pay the Federal Deposit Insurance Corporation (FDIC) $600,000.

13. Thomas and Norbert conspired to shift Norbert's assets to NBC to avoid paying the FDIC.

---

[1] Because this case involves family members with the same surname, the undersigned uses first names throughout the Complaint for clarity.

14. Around 1996, Thomas and Norbert caused the forgery of a document titled "Minutes of Special Meeting of the Board of Directors Naples Building Corporation." The document was dated February 15, 1988, bore the shareholders' purported signatures, and provided:

> Resolved that Thomas D. Murray has the authority to purchase the shares of Naples Building Corporation Stock that has been issued to the stockholders of said corporation. The purchase price has been determined to be Two Hundred and Fifty Dollars ($250.00) per Stockholder. It has further been resolved that there be no prior authorization required from said Stockholders to purchase said shares of stock, and that Thomas D. Murray shall have the rights and privileges that have been attached thereto.

(the "Forged Purchase Option").

15. Thomas and Norbert used the Forged Purchase Option to argue to a federal judge that Norbert's shares were worthless because Thomas could purchase them for only $250.

16. Thomas and Norbert also used the Forged Purchase Option to falsify financial statements. Thomas then used those financial statements to overstate his own stake in NBC to secure financing and other deals. To further these enterprises, he used both United States postal mail and electronic means to send the Forged Purchase Option and falsified financial statements to various recipients, including accountants, financial institutions, the government, and courts.

17. Colleen was unaware of the Forged Purchase Option at the time.

18. The FDIC conducted an investigation into NBC's activities and, in 1997, sued NBC, its shareholders, and several subsidiaries in the Middle District of Florida. Apart from Thomas and Norbert, the shareholders were only nominally involved in the lawsuit.

19. During the FDIC investigation, Thomas concealed corporate and financial records, directed the destruction of hard drives, and lied during depositions. The FDIC pursued sanctions against him.

20. Ultimately, NBC and the FDIC settled the lawsuit for $1.5 million in 1999.

21. In 2006, Thomas presented the other NBC shareholders (Norbert, Marjorie, Shannon, Kimberly, Michael, and Colleen) with a copy of the Forged Purchase Option.

22. Colleen did not remember signing the purchase option but recognized her signature.

23. Thomas informed the shareholders that he intended to exercise the purchase option set forth in the Forged Purchase Option and asked them to sign a document titled "Option Exercise and Release Agreement" (the "2006 Agreement"). He explained that he wanted to convert NBC to an S Corporation.

24. The 2006 Agreement included warranties from Thomas that he had "the full right, power and authority to execute and deliver this Agreement and to perform his obligations under this Agreement" and that "[n]either the execution or delivery of this Agreement . . . nor the consummation of the transactions contemplated in this Agreement . . . will contravene, conflict with, or result in a violation or breach of . . . any law, judgment, rule, order, ordinance or regulation[.]"

25. The 2006 Agreement also contained this recital: "Pursuant to the [purchase option], Thomas D. Murray is not required to obtain prior authorization from Undersigned to exercise the Option. Nevertheless, for purposes of ratifying and further evidencing the parties' intent, conduct and obligations with respect to the sale of the Ownership Interests to Thomas D. Murray, as well as for the additional consideration of a mutual release and indemnification as set forth below, Undersigned and Thomas D. Murray desire to enter into this Agreement."

26. Based on Thomas's representations in the 2006 Agreement and presentation of the Forged Purchase Option, Colleen believed that Thomas had the right to purchase her shares for $250.

27. Norbert, Marjorie, Shannon, Kimberly, and Colleen signed the 2006 Agreement. Michael—who was concerned with the tax implications and the validity of the Forged Purchase Option—refused to sign.

28. Nevertheless, Thomas unilaterally converted or attempted to convert NBC to an S Corporation.

29. From 2006 on, Thomas acted as the sole owner of NBC, including by filing tax returns claiming complete ownership and taking advantage of the tax benefits of an S Corporation.

30. In the decade following the 2006 Agreement, Thomas paid himself tens of millions of dollars in improper distributions. He paid no other family members distributions.

31. Thomas also leveraged NBC and RDI's reputations to secure real estate deals for companies he personally owned and used company resources for these private endeavors, including by: directing RDI employees to perform acquisition, development, and management services for his personal projects; operating his personal entities from RDI's offices; using RDI's operational infrastructure, systems, and business relationships; leveraging NBC's balance sheet and financial strength to provide capital; and having NBC and RDI bear the overhead costs while his entities reaped the profits.

32. In one scheme, Thomas established a relationship with a Walgreens territory manager and struck deals for his own non-NBC companies to develop Walgreens locations. Apart from leveraging NBC and RDI's reputations and using company resources, Thomas bribed the Walgreens territory manager using both personal and NBC funds.

33. In 2017, Thomas retained a new accountant for NBC. That accountant uncovered approximately $900,000 in unreconciled cash and raised questions about Thomas's self-distributions.

34. Thomas directed employees to collect and shred corporate documents, delete electronic data, and remove boxes of records from the office.

35. Thomas also created two entities, defendants TDM Property Investments LLC and TDM Holdings LLC (collectively, "TDM"). Thomas intended to merge NBC with TDM so TDM could receive NBC's assets and assets Thomas had obtained for himself using NBC resources.

36. Shannon, who was a secretary and director of NBC at the time, informed her siblings of the accounting discrepancy, direction to destroy records, and planned merger. For safekeeping, she provided Colleen with copies of documents that Thomas had intended to destroy.

37. In December 2017, Michael—who still considered himself a shareholder—sent Thomas a letter demanding preservation of NBC's records. Thomas immediately fired Shannon and Norbert.

38. Approximately two weeks later, Thomas merged NBC and TDM (less than four weeks after one of the TDM entities were formed), thereby eliminating NBC's corporate existence and transferring NBC's corporate records, physical assets, and personnel to TDM Property Investments. TDM Property Investments continued operating a Naples office using NBC's employees and resources.

39. Thomas exercised complete dominion and control over TDM's operations, finances, and business decisions.

40. Thomas paid no consideration to Michael or any other family member in connection with the merger.

41. In January 2018, Thomas offered Norbert $250,000 a year to sign an affidavit stating that he and Marjorie had never held any financial, stockholder, or ownership interest in NBC. Norbert declined. Thomas retaliated by changing the locks on a residence he and Norbert

shared, terminating Norbert's company-vehicle privileges, and terminating Norbert's credit cards. Norbert was eighty-five years old.

42. In the same month, Thomas directed his daughter to delete the only corporate email account NBC had had for nearly two decades, murrayretail@aol.com.

43. In March 2018, Michael sued Thomas for breach of fiduciary duty and self-dealing.

44. In November 2018—evidently to get ahead of Michael's pending claims and remaining family members' potential claims against him—Thomas and TDM Property Investments sued Michael, Shannon, and Colleen, alleging that they had conspired to deprive Thomas and TDM Property Investments of property.

45. Thomas submitted to the Delaware Chancery Court the Forged Purchase Option and 2006 Agreement as legitimate business documents.

46. During an October 2020 deposition, Michael's counsel provided Thomas with side-by-side copies of the signature blocks on the Forged Purchase Option and a separate document the family had signed in 1988. The signatures were identical:

*Signature Block on Separate Document*   *Signature Block on Forged Purchase Option*

47. At the deposition and later in the Delaware court proceedings, Thomas acknowledged that the signatures appeared to have been cut and pasted. He did not acknowledge his role in the forgery or that he had previously known that the document was forged, and he continued to represent to the court that he was not involved in the forgery and had only learned of the forgery during the Delaware litigation.

48. With the court's permission, Colleen filed five counterclaims on September 27, 2021: (1) fraud; (2) equitable fraud; (3) breach of fiduciary duties; (4) aiding and abetting; and (5) unjust enrichment. Her counterclaims relied on the use of the forged document rather than Thomas's involvement in the forgery.

49. The court bifurcated the case to determine whether Colleen's counterclaims were time barred.

50. In July 2022, the court conducted a trial limited to that issue.

51. In March 2023, the court held that Colleen's counterclaims were barred by laches. Specifically, the court held that Colleen was on inquiry notice of the potential invalidity of the Forged Purchase Option by September 27, 2018. (The court applied a three-year statute of limitations.)

52. In July 2024, Thomas, Shannon, and Colleen stipulated to the dismissal of the remaining claims, and the case was closed.[2]

53. A former RDI employee who watched a live streamed Delaware court proceeding was prompted to recall details about the cut-and-paste forgery of the Forged Purchase Option.

54. The former RDI employee contacted Colleen and informed her that Norbert and Thomas had been the ones to forge the Forged Purchase Option around the time of the FDIC matter.

---

[2]The remaining claims in July 2024 included Thomas and TDM's claims against Shannon and Colleen, and Shannon's counterclaim against Thomas. Michael and Thomas settled their claims against each other in July 2022.

This timing is corroborated by Thomas's 1996 financial statements, which used the forged option to claim to a federal judge that Norbert's NBC shares were worthless. Other former RDI employees provided corroborative details, including that Norbert and Thomas required assistance from another employee because they lacked the photocopying skills to execute the cut and paste. For the first time, Colleen was aware of Thomas's involvement in creating the Forged Purchase Option.

## CAUSES OF ACTION

### Count I – Declaratory Judgment, 28 U.S.C. § 2201(a)

55. Plaintiff Colleen McGuigan incorporates paragraphs 1–54.

56. Defendant Thomas Murray induced his family to enter the 2006 Agreement to unlawfully deprive them of their ownership rights in NBC and thereby improperly obtain tax benefits as the sole owner.

57. The 2006 Agreement harmed the public by permitting Thomas Murray to deceive the Internal Revenue Service and deprive the public of tax money.

58. The 2006 Agreement thus offends law and public policy and is void.

59. The parties disagree on the validity of the 2006 Agreement, which determines the ownership of NBC since 2006 and various rights related to ownership. Therefore, a real and substantial case or controversy that is definite and concrete, touching the legal relations of parties having adverse interests, exists. Declaratory judgment under 28 U.S.C. § 2201(a) is necessary to end the controversy.

WHEREFORE, Plaintiff Colleen McGuigan requests a declaratory judgment that the 2006 Agreement is void.

### Count II – Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(b)–(d) & 18 U.S.C. § 1964(c)
### (All Defendants)

60. Plaintiff Colleen McGuigan incorporates paragraphs 1–54.

61. As president of NBC, defendant Thomas Murray operated NBC through a pattern of racketeering activity as described in 18 U.S.C. § 1961(1)—including mail fraud, wire fraud, bank fraud, obstruction of justice, and witness tampering—through the following actions:

   a. conspiring with Norbert Murray to cause the forgery of the Forged Purchase Option and actually causing the forgery of the Forged Purchase Option;

   b. using the Forged Purchase Option to falsify financial statements, misrepresent his ownership status of NBC, and misrepresent the value of the shareholders' stakes in NBC to obtain financing and business deals;

   c. using the Forged Purchase Option to deceive family members into signing the 2006 Agreement;

   d. using the Forged Purchase Option and 2006 Agreement to convert NBC to an S Corporation to take advantage of improper tax benefits;

   e. destroying records to interfere with the FDIC's investigation and Michael Murray's lawsuit;

   f. attempting to bribe Norbert Murray to sign a false affidavit and retaliating when he refused;

   g. using the Forged Purchase Option and 2006 Agreement to bypass shareholder approval of the NBC–TDM merger and unilaterally effectuating the merger, thus eliminating NBC as an entity; and

   h. presenting the Forged Purchase Option and 2006 Agreement to the Delaware Chancery Court as legitimate documents and otherwise misrepresenting to the court NBC's ownership status and his role in and knowledge of the forgery.

62. Through this pattern of racketeering activity, Thomas Murray violated 18 U.S.C. § 1962(b)–(d). Specifically, he acquired greater interest in and control over NBC through

orchestrating the 2006 Agreement in violation of § 1962(b), participated in NBC's racketeering through all conduct described in paragraph 61 in violation of § 1962(c), and conspired with Norbert Murray to forge the Forged Purchase Option to deceive the government in violation of § 1962(d).

63. Through Thomas Murray's violations of 18 U.S.C. § 1962(b)–(d), Colleen McGuigan was injured in her property. Specifically, she was deprived of a 12.6% ownership interest in NBC, shareholder distributions, and voting rights.

64. Because Colleen McGuigan was injured by Thomas Murray's violations of 18 U.S.C. § 1962, she is entitled to threefold the damages she sustained, the cost of this suit, and attorneys' fees under 18 U.S.C. § 1964(c).

65. Defendants TDM Property Investments LLC and TDM Holdings LLC are alter egos of Thomas Murray, created for the purpose of converting NBC assets and eliminating NBC as an entity. Colleen McGuigan may thus recover from TDM as well as Thomas Murray.

WHEREFORE, Colleen McGuigan demands treble damages from the defendants for injuries Thomas Murray caused her by violating 18 U.S.C. § 1962, costs of the suit, and attorneys' fees. To determine the damages, Colleen McGuigan requests a full accounting of all transactions between NBC, RDI, and Thomas Murray's personal entities; the appointment of an independent forensic accountant; and the production of all relevant financial records.

### Count III – Florida Civil Remedies for Criminal Practices, §§ 772.103(2)–(4) and 772.104(1), Fla. Stat.
### (All Defendants)

66. Plaintiff Colleen McGuigan incorporates paragraphs 1–54 and 61.

67. The conduct described in paragraph 61 constitutes a pattern of criminal activity under section 772.103, Florida Statutes.

68. Through the conduct described in paragraph 61, defendant Thomas Murray acquired greater interest in and control over NBC through orchestrating the 2006 Agreement in violation of section 772.103(2), participated in NBC's racketeering through all conduct described in paragraph 61 in violation of section 772.103(3), and conspired with Norbert Murray to forge the Forged Purchase Option to deceive the government in violation of section 772.103(4).

69. Colleen McGuigan was injured by Thomas Murray's violations of section 772.103. Specifically, she was deprived of a 12.6% ownership interest in NBC, shareholder distributions, and voting rights.

70. Because Colleen McGuigan was injured by Thomas Murray's violations of section 772.103, she is entitled to threefold the damages she sustained, reasonable attorneys' fees, and court costs under section 772.104(1), Florida Statutes.

71. Defendants TDM Property Investments LLC and TDM Holdings LLC are alter egos of Thomas Murray, created for the purpose of converting NBC assets and eliminating NBC as an entity. Colleen McGuigan may thus recover from TDM as well as Thomas Murray.

WHEREFORE, Colleen McGuigan demands treble damages from the defendants for injuries Thomas Murray caused her by violating section 772.103, Florida Statutes; attorneys' fees; and court costs. To determine the damages, Colleen McGuigan requests a full accounting of all transactions between NBC, RDI, and Thomas Murray's personal entities; the appointment of an independent forensic accountant; and the production of all relevant financial records.

### Count IV – Conversion
### (All Defendants)

72. Plaintiff Colleen McGuigan incorporates paragraphs 1–54.

73. Colleen McGuigan had a 12.6% interest in NBC.

74. Defendant Thomas Murray took positive, overt acts inconsistent with Colleen McGuigan's ownership rights, including forging her signature on the Forged Purchase Option,

using the Forged Purchase Option to deceive her into signing the 2006 Agreement, holding himself out as the sole owner of NBC, failing to distribute shareholder funds to Colleen McGuigan, distributing to himself tens of millions of dollars without distributing funds to other shareholders, using NBC funds for personal bribery schemes, and leveraging NBC and RDI reputations and resources to secure personal business (including but not limited to business with the Walgreens representative), thereby diverting potential deals and income from NBC.

75. Defendants TDM Property Investments LLC and TDM Holdings LLC are alter egos of Thomas Murray created specifically to conceal Thomas Murray's acts individually and on behalf of NBC—including the conversion described in paragraph 74—and are thus liable for Thomas Murray's conversion of Colleen McGuigan's property.

76. Defendants Thomas Murray, TDM Property Investments LLC, and TDM Holdings LLC took positive, overt acts inconsistent with Colleen McGuigan's ownership rights in NBC by effectuating a merger that eliminated NBC as an entity without Colleen McGuigan and other shareholders' approval or opportunity to vote and without paying consideration to Colleen McGuigan and other shareholders.

WHEREFORE, Colleen McGuigan demands compensatory and punitive damages, attorneys' fees, and court costs.

**Count V – Florida Civil Theft, § 772.11(1), Fla. Stat.**
**(All Defendants)**

77. Plaintiff Colleen McGuigan incorporates paragraphs 1–54 and 73–76.

78. By committing the acts described in paragraphs 74–76, defendants Thomas Murray, TDM Investment Property LLC, and TDM Holdings LLC obtained or used Colleen McGuigan's property with the intent to deprive her of a right to the property or a benefit from the property and to appropriate the property to their own use. The defendants thereby committed theft in violation of section 812.014, Florida Statutes.

79. Colleen McGuigan was injured by the defendants' violation of section 812.014; specifically, she was deprived of shareholder distributions, ownership rights, and voting rights in NBC.

80. Because Colleen McGuigan has been injured by the defendants' violations of section 812.014, she is entitled to threefold her actual damages, reasonable attorneys' fees, and court costs under section 772.11(1), Florida Statutes.

WHEREFORE, Colleen McGuigan demands treble damages from the defendants for injuries she sustained from the defendants' violations of section 812.014, Florida Statutes; attorneys' fees; and court costs. To determine the damages, Colleen McGuigan requests a full accounting of all transactions between NBC, RDI, and Thomas Murray's personal entities; the appointment of an independent forensic accountant; and the production of all relevant financial records.

### DEMAND FOR JURY TRIAL

Colleen McGuigan demands a trial by jury on all issues so triable.

Respectfully submitted on December 31, 2024:

**MURPHY & ANDERSON, P.A.**

/s/ *Lawton R. Graves*
**Lawton R. Graves**
Florida Bar No.: 86935
lgraves@murphyandersonlaw.com
valic@murphyandersonlaw.com
1501 San Marco Blvd.
Jacksonville, FL 32207
(904) 380-8087
*Attorneys for Plaintiff*